THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
13 February 2007

UNITED STATES PATENT AND TRADEMARK OFFICE
————

Trademark Trial and Appeal Board
————

In re Dermahose Inc.
————

Serial No. 76585901
————

Myron Amer of Myron Amer, P.C. for Dermahose Inc.

Cynthia Sloan, Trademark Examining Attorney, Law Office 116
(M.L. Hershkowitz, Managing Attorney).
————

Before Holtzman, Drost and Walsh, Administrative Trademark
Judges.

Opinion by Drost, Administrative Trademark Judge:

On April 9, 2004, Dermahose Inc. (applicant) applied
under the intent to use provisions of the Trademark Act (15
U.S.C. § 1051(b)) to register the mark EPIL HOSE in
standard character form on the Principal Register for
"pantyhose treated with inhibitors of hair growth" in Class
25.  Serial No. 76585901.  The application contains a
disclaimer of the term "Hose."

The application was published for opposition on
January 25, 2005.  On April 19, 2005, the Office issued a
notice of allowance.  On August 29, 2005, applicant filed a

Ser. No. 76585901

"Declaration Pursuant to 37 C.F.R. § 2.20 to Support

Allegations in Statement of Use under Sec. 2.88."

The language in the declaration is set out below:

Paul Zaidman declares:  That he is president of the applicant of the above-captioned application and has authorized MYRON AMER, as attorney, to execute this declaration on his behalf; that he believes said applicant to be the owner of the trademark sought to be registered and entitled to use the mark in commerce; that to the best of his knowledge and belief, no other person, firm, corporation or associate [sic] has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; that the mark was first used in intrastate and interstate commerce at least as early as August 17, 2005, and is still in use in such commerce; that the mark is used for "PANTYHOSE TREATED WITH INHIBITORS OF HAIR GROWTH" in International Class 25; that the mark is used on the packaging of the goods, there being submitted herewith pursuant to TMEP 905.04(b) a specimen, consisting of a stamping applied by a rubber stamp on the packaging of the goods, showing the manner in which the mark is used on the goods; that all statements made of his own knowledge are true and that all statements made upon information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any registration resulting therefrom.

The declaration was signed[1] as follows:

---

[1] We note that the declaration was apparently incorrectly dated August 24, *2004* instead of 2005.

2

therefrom.

DERMAHOSE INC.

By: _Myron Amer_
MYRON AMER, as Attorney

Dated: August 24, 2004

On September 21, 2005 (p. 1), the examining attorney notified applicant that the declaration was not acceptable because "Myron Amer does not make any statements in the declaration.  Rather, the declaration is merely a statement as to the beliefs of applicant's president, Paul Zaidman." TMEP § 1109.07 (4th ed. April 2005) ("The examining attorney will review the statement of use to confirm that it meets the requirements of the Act and the rules").  On October 11, 2005, applicant responded to the examining attorney's objection to the statement of use but it did not file an alternative statement of use or a request for an extension of time to file a statement of use.  See TMEP § 1109.02:

> However, to gain additional time to comply with the minimum requirements, the applicant may file a final ("insurance") extension request with or after the filing of a statement of use, if there is time remaining in the statutory period for filing the statement of use, provided that granting the extension request would not extend the time for filing the statement of use beyond thirty-six months from the issuance of the notice of allowance).

3

See also TMEP § 1109.11 ("The requirement that a statement of use include a signed verification or declaration is a statutory requirement that must be satisfied before expiration of the deadline for filing the statement of use").

Ultimately, the examining attorney refused registration on the ground that "the declaration supporting the statement of use is unacceptable." Brief at 1. Specifically, the examining attorney maintains that "Applicant's attorney attempts to sign a declaration for which he makes no statement. Rather, he is relying on statements made by Paul Zaidman. If the declaration is made by Paul Zaidman, which is clear from the above language, 'PAUL ZAIDMAN declares,' then it must be signed by him." Brief at unnumbered pp. 3-4.

Applicant maintains (Brief at unnumbered p. 2) that the statement that "Paul Zaidman … has authorized MYRON AMER, as attorney, to execute this declaration on his behalf" is an implied power of attorney under 37 CFR § 2.33(a)(3). Also, applicant's position is that the application's power of attorney is an authorization to sign the declaration. Finally, applicant asserts that "the procedure followed by counsel was recommended by another examining attorney and, by approximate count of fifty or so

4

instances, has been accepted without objection by any other examining attorney."  Reply Brief at unnumbered p. 2.

In this case, applicant has filed a statement of use and the examining attorney has objected to the statement because the declaration indicates that it is the declaration of Paul Zaidman but it is signed by Myron Amer. USPTO's rules list some of the requirements for a statement of use as follows (37 CFR § 2.88):

> (a) In an application under §1(b) of the Act, a statement of use, required under §1(d) of the Act, must be filed within six months after issuance of a notice of allowance under §13(b)(2) of the Act, or within an extension of time granted under §2.89.  A statement of use that is filed prior to issuance of a notice of allowance is premature, will not be considered, and will be returned to the applicant.
>
> (b) A complete statement of use must include:
>
> (1) A statement that is signed and verified (sworn to) or supported by a declaration under §2.20 by a person properly authorized to sign on behalf of the applicant (see §2.33(a)) that:
>
> (i) The applicant believes it is the owner of the mark; and
>
> (ii) The mark is in use in commerce, specifying the date of the applicant's first use of the mark and first use of the mark in commerce, and those goods or services specified in the notice of allowance on or in connection with which the applicant uses the mark in commerce.

Trademark Rule 2.20 (37 CFR § 2.20) provides that trademark verifications may be made by "an oath, affidavit,

verification, or sworn statement, the language of 28 U.S.C. 1746," or a declaration punishable under 18 U.S.C. § 1001.

Trademark rules (37 CFR § 2.193) also require the following:

> (c)(1) Each piece of correspondence that requires a person's signature, must:
>
> (i) Be an original, that is, have an original signature personally signed in permanent ink by that person; or
>
> (ii) Be a copy, such as a photocopy or facsimile transmission (§2.195(c)), of an original.  In the event that a copy of the original is filed, the original should be retained as evidence of authenticity.  If a question of authenticity arises, the Office may require submission of the original.[2]

When the Office changed the rules to permit attorneys to sign the application and other papers, the following explanation was provided (64 Fed. Reg. 48900, 48901-02, September 8, 1999):

> Currently, sections 1(a)(1)(A) and 1(b)(1)(A) of the Act require that an application by a juristic applicant be signed "by a member of the firm or an officer of the corporation or association applying." TLTIA section 103 amends sections 1(a) and 1(b) of the Act to eliminate the specification of the appropriate person to sign on behalf of an applicant.

---

[2] 37 CFR § 2.193(c)(1)(iii) also addresses signatures for electronic filings.  Obviously, if applicant filed electronically or used the USPTO's standard form this problem could have been avoided.  See also TMEP § 1109.05 (4th ed. April 2005) ("To expedite processing, it is recommended that the statement of use be filed through TEAS, available at http://www.uspto.gov/teas/index.html.  Alternatively, the applicant can call the Trademark Assistance Center at (571) 272-9250 or (800) 786-9199 to have a pre-printed form mailed") (citation omitted).

The applicant or registrant, and the applicant's or registrant's attorney, are best able to determine who should sign documents filed in the Office. Therefore, the Office will no longer question the authority of the person who signs a verification, or a renewal application, unless there is an inconsistency in the record as to the signatory's authority to sign. Proposed § 2.33(a) stated that a person properly authorized to sign on behalf of the applicant "includes a person with legal authority to bind the applicant and/or a person with firsthand knowledge and actual or implied authority to act on behalf of the applicant."

Comment: One comment suggested that § 2.33(a) be amended to state that a person who is properly authorized to sign on behalf of the applicant includes: (1) A person with legal authority to bind the applicant, (2) a person with firsthand knowledge of the facts asserted, and actual or implied authority to act on behalf of the applicant, and (3) an attorney as defined in §10.1(c) of this chapter who has an actual or implied, written or verbal power of attorney from the applicant, provided that the Office may require written confirmation of such power of attorney subsequent to the filing of the verified statement.

Response: The suggestion has been adopted, but modified slightly. The Office will not require written confirmation of a power of attorney, but will accept the attorney's word that he or she is authorized to sign on behalf of the applicant.

It is clear that a statement of use must include a "statement that is signed and verified (sworn to) or supported by a declaration under §2.20 by a person properly authorized to sign on behalf of the applicant." The rules, however, do not provide authority for attorneys to sign another person's declaration. It is also clear that persons who may sign the statement of use include, inter

7

alia, a person with legal authority to bind the applicant[3]
and an attorney[4] "who has an actual or implied written or
verbal power of attorney from the applicant."  37 CFR
§ 2.33(a)(1) and (3).  Therefore, both Mr. Zaidman and Mr.
Amer had the authority to sign the statement of use.  The
question then becomes whether Mr. Amer may sign
Mr. Zaidman's declaration.[5]  We hold that he cannot.

---

[3] "Generally, the Office does not question the authority of the
person who signs a verification, unless there is an inconsistency
in the record as to the signatory's authority to sign."  TMEP
§ 804.04 (4th ed. rev. April 2005).  "President" is considered a
title that would indicate that the person has authority to sign
on behalf of the corporation.  See, e.g., TMEP § 712.01(a)(iv)
(4th ed. rev. April 2005) ("A response to an Office action by a
corporation that is not represented by an attorney must be signed
by a corporate officer.  An officer is a person who holds an
office established in the articles of incorporation or corporate
bylaws.  The usual titles for officers are President…").
[4] "If an attorney signs a verification on behalf of an applicant,
the Office will not require a power of attorney or other
documentation stating that the attorney is authorized to sign."
TMEP § 804.04.
[5] We are aware that this case could also have been subject to a
petition to the Commissioner for Trademarks.  In re Du Pont Merck
Pharmaceutical Co., 34 USPQ2d 1778, 1781 (Comm'r Pat. 1995) ("In
the present case, the issue regarding the proper signatory for an
application and Statement of Use filed by a partnership Applicant
is clearly one of procedure and practice under the rules, and is
properly reviewable on petition").  However, there are matters
that may be reviewable "by either appeal or petition."  TBMP
§ 1201.05 (2d ed. rev. 2004).  Specifically, an "appeal to the
Board may be taken from any final action … issued by the
trademark examining attorney … whether the matter involved in the
examining attorney's action is substantive or procedural in
nature").  Id.  Inasmuch as this case has been appealed to the
board and it appears to be reviewable by either petition or
appeal, we will proceed to decide the issue in this case.  We
note that it is not clear why applicant did not provide a
substitute declaration to satisfy the examining attorney's
requirement and, thereby, avoid this appeal.

As indicated above, an applicant may meet the requirement for a verified or sworn statement by using an oath, affidavit, verification, or sworn statement.  In addition, 28 U.S.C. § 1746 permits the use of an unsworn declaration under penalty of perjury whenever "any matter is required to be supported or permitted to be supported … by the sworn oath, verification, or statement" of a person. The unsworn declaration under penalty of perjury concludes with the following statement:

> I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States that the foregoing is true and correct.

USPTO rules also provide another option.  Rule 2.20 permits the use of a statement in which the person is warned of 18 U.S.C. § 1001's criminal penalties:

> The undersigned being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements and the like may jeopardize the validity of the application or document or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true; and all statements made on information and belief are believed to be true.

> Applicant attempted to use this option.  However, it

changed the language.

> Paul Zaidman declares:  That he is president of the applicant of the above-captioned application and has authorized MYRON AMER, as attorney, to execute this declaration on his behalf; that he believes said applicant to be the owner of the trademark… that all

statements made of his own knowledge are true and that all statements made upon information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any registration resulting thereform.

Most critically, the statement omits the language "the undersigned." In effect, the common feature of oaths, sworn statements, unsworn declarations under penalty of perjury, and declarations under Rule 2.20 is that the person making the statement is subjecting himself or herself to criminal penalties for making statements that the person knows are not true. For example, the unsworn declaration ends with the statement "I declare" and a properly worded Rule 2.20 declaration states the "undersigned … declares."

Applicant has modified the Rule 2.20 statement to indicate that the undersigned is not declaring or subjecting himself to anything. Therefore, it does not meet the requirement for a Rule 2.20 declaration or any other form of oath or declaration and applicant has not complied with the requirements for submitting a statement of use under Rule 2.88 and as a result there is material inconsistency in the declaration. TMEP § 804.04. Inasmuch

10

as applicant's declaration is deficient, we affirm the examining attorney's refusal to register.[6]

Decision: The examining attorney's refusal to register the mark is affirmed.

---

[6] We add that there is no evidence that the Office has permitted these types of declarations in the past besides applicant's closing statement in its reply brief to which the examining attorney has not had an opportunity to reply. Even if this were the case, it would hardly justify the continuation of the practice. These examining attorneys would not have had the authority to ignore the requirement for a proper declaration under Rule 2.20. Accord In re Boulevard Entertainment Inc., 334 F.3d 1336, 67 USPQ2d 1475, 1480 (TTAB 2001) ("The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases").